UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN BELLINGHAM, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| QUDIAN INC., MIN LUO, and CARL YEUNG, | |
| Defendants. | |

Plaintiff Stephen Bellingham ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Qudian Inc. ("Qudian" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Qudian securities between December 13, 2018 and January 15, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Qudian was founded in 2014 and is headquartered in Xiamen, the People's Republic of China ("China").  Qudian provides online small consumer credit products in China, using big data-enabled technologies, including artificial intelligence and machine learning to purportedly transform the consumer finance experience.

3.     Qudian offers small credit products, such as cash credit products; merchandise credit products to finance borrowers' direct purchase of merchandise offered on its marketplace on installment basis; and budget auto financing products.  In addition, it operates a platform for loan recommendations and referrals.

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) regulatory developments in China threatened to negatively impact Qudian's fiscal full year 2019 ("FY19") financial results;  (ii) Qudian's business was unprepared to mitigate the risks associated with these regulatory changes; (iii) as a result, Qudian's loan portfolio was plagued by growing delinquency rates; (iv) all of the foregoing made Qudian's repeated assertions concerning its FY19 financial guidance unrealistic; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.     On January 16, 2020, Qudian issued a press release announcing "that the Company withdraws its fiscal 2019 guidance and will not issue guidance in the near term due to uncertainty related to the recent regulatory and operating environment."  The press release stated that "China's online consumer finance industry was affected by several regulatory developments in the fourth quarter of 2019, including further restrictions on loan collection practices, more stringent user data privacy rules and the requirements for P2P lending platforms to orderly exit their P2P businesses," which had "reduced the availability of funding for consumer credit and driven up delinquency rates across the industry, including the Company's loan portfolio."

6.     On this news, Qudian's ADS price fell $0.84 per share, or 19.13%, to close at $3.55 per share on January 16, 2020.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Qudian securities trade on the New York Stock Exchange ("NYSE"), located within this Judicial District.

11.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.      Plaintiff, as set forth in the attached Certification, acquired Qudian securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.      Defendant Qudian is a Cayman Islands corporation with principal executive offices located at Tower A, AVIC Zijin Plaza, Siming District, Xiamen, Fujian Province 361000, China. Qudian's securities trade on the NYSE under the ticker symbol "QD."

14.     Defendant Min Luo ("Luo") has served as Qudian's Chairman and Chief Executive Officer at all relevant times.

15.     Defendant Carl Yeung ("Yeung") has served as Qudian's Chief Financial Officer at all relevant times.

16.     Defendants Luo and Yeung are sometimes referred to herein as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of Qudian's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Qudian's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Qudian, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

18.     Qudian and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Qudian was founded in 2014 and is headquartered in Xiamen, China.  Qudian provides online small consumer credit products in China, using big data-enabled technologies,

including artificial intelligence and machine learning to purportedly transform the consumer finance experience.

20.     Qudian offers small credit products, such as cash credit products; merchandise credit products to finance borrowers' direct purchase of merchandise offered on its marketplace on installment basis; and budget auto financing products.  In addition, it operates a platform for loan recommendations and referrals.

### Materially False and Misleading Statements Issued During the Class Period

21.     The Class Period begins on December 13, 2018, when Qudian issued a press release, during pre-market hours, announcing its FY19 financial guidance.  That press release assured investors that the Company's FY19 forecast had accounted for a variety of factors and risks that could impact the Company's financial results, and was therefore a reliable and conservative estimate of the Company's FY19 financial results, stating, in relevant part:

> [B]ased on the Company's current operational outlook while acknowledging recent market conditions and macroeconomic performance indicators, as well as its preliminary expectations of its regulatory environment, customer demand, market conditions and operations in the near future, the Company expects that its total non-GAAP net income for the full year of 2019 will be greater than RMB3.5 billion, after excluding non-recurring costs and charges.

22.     On March 18, 2019, Qudian issued a press release announcing its fourth quarter and full year financial results for fiscal year 2018 (the "4Q/FY18 Press Release").  That press release reiterated the Company's confidence in its FY19 financial guidance, representing that "[t]he Company reaffirms its total Non-GAAP net income for the full year of 2019 will exceed RMB3.5 billion after excluding non-operating costs and charges, which would represent a 37.3% increase from RMB2,549.3 million for 2018."

23.     Additionally, the 4Q/FY18 Press Release assured investors that the FY19 guidance was reliable and "based on current market conditions and reflects the Company's preliminary

6

expectations as to market conditions, its regulatory and operating environment, as well as customer demand."  Notwithstanding the purportedly well-informed confidence with which the Company reaffirmed its FY19 guidance, the 4Q/FY18 Press Release included the vague caveat that these factors "are subject to change," which was plainly a general "catch-all" term that was not tailored to Qudian's actual known risks with respect to potential regulatory developments in China.

24.    On April 15, 2019, Qudian filed an Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 20-F").  In a section titled "Economic Conditions and Regulatory Environment in China," the 2018 20-F indicated that not only could the Company adapt to Chinese regulatory changes as they developed, but also simultaneously downplayed the risk of potential regulatory changes by asserting that such changes could benefit the Company.  For example, that section of the 2018 20-F asserted that Qudian would "comply with new laws and regulations or changes under existing laws and regulations that may arise in the future,"  and that "[w]hile new laws and regulations or changes to existing laws and regulations could make facilitating credit to borrowers more difficult or expensive, or making such credit products more difficult for borrowers or institutional funding partners to accept or on terms favorable to [the Company], *these events could also provide new product and market opportunities*" (emphasis added).

25.    The 2018 20-F further allayed investor concerns regarding Chinese regulatory impacts on Qudian's business by touting the Company's risk management team, which was purportedly comprised of 177 employees who regularly monitored portfolio performance and stability, optimized the Company's loan system to China's developing regulatory framework, and employed a machine learning algorithm to manage delinquency risk.  For example, the 2018 20-F stated, in relevant part:

Our risk management team meets regularly to examine the credit and enterprise risks of our company, and is intimately involved in portfolio management, credit model development, validation and optimization. Tasks performed by our risk management team includes reporting on origination trends, monitoring of portfolio performance and stability, risk concentrations, building and maintaining credit models, performing economic stress tests on our portfolio, optimizing credit decisioning processes and conducting peer benchmarking and exogenous risk assessments.

[. . . .] [P]olicies and practices are designed to optimize regulatory compliant repayment, while also providing superior borrower experience. [. . . .]

We have developed a machine learning algorithm to better allocate collection resources based on more detailed grouping of larger delinquency risk, which we rolled out in the second quarter of 2017 . . . . We expect to both improve our collection efficiency and reduce delinquency under this algorithm.

26.    Further, the 2018 20-F touted Qudian's "M1+ delinquency rate," which the 2018 20-F defines "as the total balance of outstanding principal of a vintage[1] for which any installment payment is over 30 calendar days past due as of a particular date (adjusted to reflect total amount of recovered past due payments for principal, before charge-offs), divided by the total initial principal in such vintage."  Specifically, the 2018 20-F touted that "M1+ delinquency rate by vintage for vintages in 2017 remained at a level of 2.0% or less up to December 31, 2018 as a result of [the Company's] effective credit assessment model and risk management system despite serving a more diverse customer group," and that "M1+ delinquency rate by vintage for the first three quarters of 2018 remained at less than 2.5% up to December 31, 2018, which demonstrates the effectiveness of [the Company's] risk management system."

27.    Appended as exhibits to the 2018 20-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein the Individual Defendants certified that "[t]he [2018 20-F] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of

---

[1] The 2018 20-F defines "vintage" as "transactions [Qudian] facilitated during a specified time period."

1934" and that "[t]he information contained in the [2018 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

28.     On May 20, 2019, Qudian issued a press release announcing its financial results for the first quarter of fiscal year 2019 (the "1Q19 Press Release").  In that press release, the Company again reiterated confidence in its FY19 financial guidance, stating that "[t]he Company reaffirms its total Non-GAAP net income for the full year of 2019 to exceed RMB3.5 billion, which will represent a 37.3% increase from RMB2,549.3 million for 2018," and that "[t]he above outlook is based on current market conditions and reflects the Company's preliminary expectations as to market conditions, its regulatory and operating environment, as well as customer demand."  This press release also provided the same vague caveat that "all of [these factors] are subject to change," which was plainly a general "catch-all" term that was not tailored to Qudian's actual known risks with respect to potential regulatory developments in China.

29.     Additionally, the 1Q19 Press Release quoted Defendant Yeung, who parroted the press release's confidence in Qudian's FY19 financial guidance, stating that "[w]ith solid first quarter results and ample external funding, we remain confident in achieving our guidance announced in December 2018 and expect full year 2019 Non-GAAP net income to exceed RMB3.5 billion."  Defendant Yeung further represented that "[a]gainst this healthy outlook, we recently bought back all our remaining shares held by Kunlun Group Limited for US$103.2 million and subsequently cancelled the related 18,173,885 ADSs in order to further enhance our EPS, demonstrating our long-standing commitment to delivering shareholder value," thereby further indicating to investors the Company's confidence in its FY19 financial guidance.

30.     On June 21, 2019, Qudian issued a press release updating its FY19 financial guidance by raising it above prior valuations by RMB1 billion (the "June 2019 Press Release").

Specifically, that press release stated that "based on its latest operational outlook and market conditions, *as well as preliminary expectations of the relevant regulatory environment in the near future*, the Company raised its total non-GAAP net income guidance for the full year of 2019 from greater than RMB3.5 billion, as announced on December 13, 2018, to greater than RMB4.5 billion" (emphasis added).

31.     The June 2019 Press Release also quoted Defendant Luo, who attributed the increased FY19 financial guidance to "encouraging trends in our business"; "strong momentum in our open platform initiative"; "a higher level of no-risk, high margin incremental profits than we had anticipated"; and that, "given our sufficient funding and strong user demand, growth of our loan book is well ahead of our previously set targets, *giving us strong confidence that we will meet our revised guidance*" (emphasis added).

32.     On August 16, 2019, Qudian issued a press release announcing its financial results for the second quarter of fiscal 2019.  That press release, in same manner as prior press releases, reiterated confidence in the Company's FY19 financial guidance, stating that "[t]he Company reaffirms its total Non-GAAP net income for the full year of 2019 to exceed RMB4.5 billion, which will represent a 76.5% increase from approximately RMB2.5 billion for 2018; and that "[t]he above outlook is based on current market conditions and reflects the Company's preliminary expectations as to market conditions, its regulatory and operating environment, as well as customer demand"; while supplying the same merely generic, boilerplate representation that these factors were "subject to change," which was plainly a general "catch-all" term that was not tailored to Qudian's actual known risks with respect to potential regulatory developments in China.

33.     The statements referenced in ¶¶ 21-32 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse

facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) regulatory developments in China threatened to negatively impact Qudian's FY19 financial results; (ii) Qudian's business was unprepared to mitigate the risks associated with these regulatory changes; (iii) as a result, Qudian's loan portfolio was plagued by growing delinquency rates; (iv) all of the foregoing made Qudian's repeated assertions concerning its FY19 financial guidance unrealistic; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

34.     On November 18, 2019, during pre-market hours, Qudian issued a press release announcing its financial results for the third quarter of fiscal 2019 (the "3Q19 Press Release"). That press release reduced the Company's previously reported FY19 guidance by approximately RMB0.5 billion. Specifically, the 3Q19 Press Release advised that "[d]ue to recent strategy for the company to reduce risk-taking loan balance and focus on higher quality borrowers via open-platform, the Company has adjusted its expected total Non-GAAP net income for [FY19] to RMB4.0 billion, which will represent an approximately 57% increase from RMB2.55 billion for 2018." As with prior guidance, the 3Q19 Press Release assured investors this forecast was "based on current market conditions and reflects the Company's preliminary expectations as to market conditions, its regulatory and operating environment, as well as customer demand, all of which are subject to change."

35.     On this news, Qudian's ADS price fell $1.58 per share, or 21.07%, to close at $5.92 per share on November 18, 2019. Despite this large share price decline, the Company's securities

continued to trade at artificially inflated prices throughout the Class Period as a result of Defendants' unduly optimistic statements and misrepresentations.

36.    For example, the 3Q19 Press Release quoted Defendant Luo, who touted the Company's adaptation to China's regulatory requirements for its lending business, including complete avoidance of a P2P business model and improvements in the Company's data privacy and loan collection practices. Specifically, Defendant Luo represented, in relevant part:

> In the face of a complex and evolving regulatory framework over the past several years we have proven our ability to lead and innovate, creating China's leading regulatory compliant fintech company. Our past efforts in full compliance with Circular 141, restrained use of micro lending license, complete avoidance of P2P business model, 100% institutional funding base, disciplined approach to collection and respect of our customers' data privacy have all cumulated to our open platform solution. Our open platform where the licensed and regulated financial institutions lend and assume borrowers risk while QD provides a full suite of transaction services using cutting edge technologies to enhance analytics, user experience, reduce customer acquisition and engagement cost, is likely to be the ultimate form of regulatory compliant fintech in China.

37.    The statements referenced in ¶ 36 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) regulatory developments in China threatened to negatively impact Qudian's FY19 financial results;  (ii) Qudian's business was unprepared to mitigate the risks associated with these regulatory changes; (iii) as a result, Qudian's loan portfolio was plagued by growing delinquency rates; (iv) all of the foregoing made Qudian's repeated assertions concerning its FY19 financial guidance unrealistic; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Fully Emerges**

38.     On January 16, 2020, Qudian issued a press release announcing "that the Company withdraws its fiscal 2019 guidance and will not issue guidance in the near term due to uncertainty related to the recent regulatory and operating environment."  The press release stated that "China's online consumer finance industry was affected by several regulatory developments in the fourth quarter of 2019, including further restrictions on loan collection practices, more stringent user data privacy rules and the requirements for P2P lending platforms to orderly exit their P2P businesses," which had "reduced the availability of funding for consumer credit and driven up delinquency rates across the industry, including the Company's loan portfolio."

39.     On this news, Qudian's ADS price fell $0.84 per share, or 19.13%, to close at $3.55 per share on January 16, 2020.

40.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Qudian securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Qudian securities were actively traded on the NYSE.

While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Qudian or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Qudian;

- whether the Individual Defendants caused Qudian to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Qudian securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

47.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Qudian securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Qudian securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

50.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Qudian securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Qudian securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described

above, including statements made to securities analysts and the media that were designed to influence the market for Qudian securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Qudian's finances and business prospects.

54. By virtue of their positions at Qudian, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Qudian, the Individual Defendants had knowledge of the details of Qudian's internal affairs.

56. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Qudian. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Qudian's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the

17

aforementioned false and misleading reports, releases and public statements, the market price of Qudian securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Qudian's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Qudian securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57.     During the Class Period, Qudian securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Qudian securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Qudian securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Qudian securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

60. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. During the Class Period, the Individual Defendants participated in the operation and management of Qudian, and conducted and participated, directly and indirectly, in the conduct of Qudian's business affairs. Because of their senior positions, they knew the adverse non-public information about Qudian's misstatement of income and expenses and false financial statements.

62. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Qudian's financial condition and results of operations, and to correct promptly any public statements issued by Qudian which had become materially false or misleading.

63. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Qudian disseminated in the marketplace during the Class Period concerning Qudian's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Qudian to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Qudian within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Qudian securities.

64.     Each of the Individual Defendants, therefore, acted as a controlling person of Qudian.  By reason of their senior management positions and/or being directors of Qudian, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Qudian to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Qudian and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Qudian.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  January 22, 2020                    Respectfully submitted,

                                            POMERANTZ LLP

                                            */s/ Jeremy A. Lieberman*
                                            Jeremy A. Lieberman

J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, _Stephen Bellingham_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Qudian Inc. ("Qudian" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Qudian securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a class of investors who purchased or acquired Qudian securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Qudian securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro-rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed _____17 JAN 2020_____
                    **(Date)**

_____
**(Signature)**

_____
**(Type or Print Name)**

**Qudian, Inc.**                                                    **Bellingham, Stephen**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 2/13/2019 | Purchase | 400 | $5.0300 |
| 3/1/2019 | Purchase | 100 | $6.4000 |
| 3/14/2019 | Purchase | 1,000 | $5.2100 |
| 6/5/2019 | Purchase | 400 | $6.9000 |
| 9/16/2019 | Purchase | 1,000 | $7.0300 |
| 11/20/2019 | Purchase | 2,000 | $5.3300 |