USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __7/9/2020__

TELEPHONE: +1-650-251-5000    **MEMORANDUM ENDORSED**
FACSIMILE: +1-650-251-5002

Direct Dial Number                                              E-mail Address
(650) 251-5080                                          jkreissman@stblaw.com
(605) 251-5153                                            sblake@stblaw.com

BY ECF                              July 8, 2020

Hon. Gregory H. Woods
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl St., Room 2260
New York, New York 10017-1312

          Re:    *Greco, et al., v. Qudian Inc., et al.*, Case No. 1:20-cv-00577-GHW (S.D.N.Y.)

Dear Judge Woods:

          Pursuant to the Court's Individual Rules of Practice and its April 28, 2020 Order (Dkt. No. 39),
Defendants Qudian Inc. ("Qudian"), Min Luo, and Carl Yeung (the "Individual Defendants" and, with
Qudian, "Defendants") respectfully submit this letter in support of Defendants' request to move to dismiss
the Amended Class Action Complaint ("AC") in the above-captioned action.

          **Background:** Defendant Qudian is a leading Chinese "micro-lender" or provider of small loans to
consumers.  Qudian is a young company operating in an uncertain regulatory environment and a volatile
credit market.  Qudian launched a new business initiative in late 2018 called the "open platform" (or "OP"),
and experienced strong growth in this segment.  During the putative Class Period, the Company provided
forward-looking guidance based on the best information available to it at the time.  In the third quarter of
2019, Qudian reduced that guidance as it saw the credit markets begin to sour, and, in January 2020, Qudian
withdrew its guidance entirely following a further credit market downturn, significant regulatory
developments, and the beginning of the global COVID-19 pandemic.

          This lawsuit followed, asserting legal claims under Sections 10(b) and 20(a) of the Securities
Exchange Act of 1934.  Plaintiffs claim that Qudian provided overly optimistic guidance to the market in an
effort to inflate its stock price.  They also allege that Qudian failed to inform investors that: (a) its historic
core lending business (known as the "core loan book" or "CLB") operated in violation of Chinese law; (b) its
new OP business merely replaced a segment of its traditional CLB business, and thus was not a source for
real growth; and (c) the only reason Qudian's CLB business grew in early 2019 was because Qudian lowered
its lending standards through a "credit trial program."

          **Motion to Dismiss Bases:** The AC should be dismissed because it fails to meet the heightened
pleading requirements imposed on securities fraud claims by the Private Securities Litigation Reform Act of
1995 ("PSLRA") and Federal Rule of Civil Procedure 9(b), in several ways.  ***First***, Plaintiffs cannot state a
claim based on Qudian's forward-looking guidance, because those statements are protected by the PSLRA
"safe harbor," which exempts from liability "forward-looking statements" such as earnings projections that
***either*** (i) were not made "with actual knowledge" of falsity ***or*** (ii) were accompanied by "meaningful
cautionary language."  15 U.S.C. § 78u–5(i)(1); *see, e.g.*, *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir.
2010) ("The safe harbor is written in the disjunctive.").  As explained below, Plaintiffs fail to plead facts

supporting actual knowledge, which alone is fatal to this claim.  Moreover, Qudian's forward-looking statements were accompanied by meaningful cautionary language, including disclosure of numerous "risks and uncertainties" that might "cause actual results to differ materially" and cross-references to exhaustive risk warnings in Qudian's SEC filings.  *See, e.g.*, "Qudian Inc. Provides Guidance for Full Year 2019" at 3 (Dec. 13, 2018).  Those SEC filings warned investors that, among many other things, the company had "a limited operating history in a new and evolving market, which makes it difficult to evaluate our future prospects" and that "the regulatory regime and practice" were "evolving and subject to uncertainty."  Annual Report (Form 20-F) at 4, 12 (Apr. 9, 2018) ("2017 20-F"); *see id.* at 4-60 (providing 56 pages of risk factors).  Because Qudian's disclosures far exceed the minimal cautionary language that courts routinely find sufficient to invoke the safe harbor, its use of such language provides a separate basis for dismissal.

**Second**, Plaintiffs have failed to plead any actionable non-forward looking misrepresentations.  Plaintiffs first claim that Qudian's CLB operated in violation of Chinese law.  This assertion is based principally on the fact that the Chinese government restricted one of Qudian's two lending licenses in May 2019.  AC ¶ 72.  However, Qudian had stopped using the license in question in 2017.  The Company clearly explained to investors that it was funding CLB credit drawdowns through trusts and guarantee arrangements with financial institutions, not through direct lending under these licenses.  *See* 2017 20-F at 12 (we "ceased funding credit drawdowns through our online small credit companies since December 2017"); Annual Report on Form 20-F for 2018 ("2018 20-F") at 9 (Qudian "historically" used these entities).  Plaintiffs also claim that Qudian was violating a Chinese regulation known as "Circular 141," by providing credit assessments to third-parties who made loans to Qudian customers.  *SAC* ¶¶ 66-70.  This claim is not well-pleaded both because its factual premise rests entirely on the conclusory allegations of a single "Confidential Witness," CW4—who left Qudian months prior to the Class Period and therefore lacks relevant knowledge, AC ¶ 69; *see Long Miao v. Fanhua, Inc.*, No. 18 CIV. 8183 (PAE), 2020 WL 996602, at *20 (S.D.N.Y. Mar. 2, 2020) (dismissing complaint that "fail[ed] to anchor the [confidential] witness statements in the class period" and was "silent as to any basis to believe either that these witnesses have knowledge as to . . . current operations or that their statements about past practices apply to the present")—and because Qudian could not violate Circular 141 in the manner described by Plaintiffs as a matter of Chinese law.

Plaintiffs next claim that Qudian's new OP business was actually the "same business" as its historic CLB business, AC ¶ 191, and that Qudian launched OP not to grow its revenue, but instead to comply with Circular 141.  *Id.* ¶¶ 167-76.  This claim fundamentally mischaracterizes the CLB and OP businesses.  In its CLB business, Qudian is exposed to credit risk if a borrower defaults.  By contrast, in OP transactions, Qudian deploys no capital and takes no credit risk.  It simply collects referral fees and commissions from other institutions who make loans to borrowers.  Because earning risk-free fees and commissions is a fundamentally different business from making loans exposed to credit risk, Plaintiffs' premise is demonstrably incorrect.  Plaintiffs also claim that Qudian failed to tell investors that the OP platform would take the "best borrowers" from the CLB business.  *Id.* ¶¶ 177-85.  This allegation again ignores or misconstrues Qudian's disclosures, which expressly told investors that, "[f]or users that do not meet our credit requirements, we provide recommendations of financial products that are offered by financial service providers," while, "for users with better credit profiles *that are applying for large loan amounts that exceed the limit* permitted under our policy, we refer their applications to our institutional funding partners" (banks).  2018 20-F at 16, 62 (emphasis added).  In other words, the "better" borrowers that Qudian is supposedly losing were actually borrowers seeking loans larger than Qudian was willing to provide through its CLB.  Plaintiffs' allegation that Qudian subsequently "admitted" that OP took the "best borrowers" *from* the CLB is therefore demonstrably false, because Qudian merely reiterated the fact that the OP gave its customers access to higher borrowing limits.  Because Plaintiffs have no factual basis to allege that these higher limit loans were ever part of the CLB, these allegations are not well-pleaded and this claim should be dismissed.

Hon. Gregory H. Woods                                                    Simpson Thacher & Bartlett LLP
July 8, 2020

Plaintiffs finally claim that Qudian misled investors because its CLB growth during the Class Period was fueled by an undisclosed "credit trial program." AC ¶¶ 107-16. However, Plaintiffs fail to identify any actionable misstatement. A company has no "duty to disclose information simply because it is material," *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 434 (S.D.N.Y. 2018) (Woods, J.); rather, the allegedly omitted material must be "necessarily inconsistent" with its disclosures. *Ladmen P'ners v. Globalstar, Inc.*, No. 07Civ0976, 2008 WL 4449280, at *16 n.16 (S.D.N.Y. Sept. 30, 2008). Here, Qudian did not have, and did not disclose, any specific lending standards to investors. To the contrary, Qudian told investors that it was constantly changing its credit standards and repeatedly disclosed the risk that these changes could affect delinquency rates. *See* 2017 20-F at 9 ("we broaden our prospective borrower base from time to time . . . . As a result of such changes, we may be unable to maintain low delinquency rates for transactions facilitated by us in the future"). Before the Class Period began, Qudian explicitly disclosed that its credit standards "will actually relax a lot more into fourth quarter," Q3 2018 Earnings Call at 12 (Nov. 21, 2018), and it disclosed the program in detail during the Class Period, specifically highlighting the fact that it negatively affected Qudian's delinquency rates. Q2 2019 Earnings Call at 2 (Aug. 16, 2019) ("Our M1+ vintage delinquency rates would have decreased by 0.5% excluding users in these trial programs."). In sum, because the program and its incumbent risks were disclosed to investors, this claim should be dismissed.

**Third**, the AC should be dismissed because Plaintiffs fail to plead particularized facts that give rise to a "strong inference" that any Defendant acted with scienter, as required by the PSLRA. Plaintiffs offer no viable motive allegations, such as stock sales. Instead, they rely on conclusory allegations that Defendants Luo and Yeung are senior executives who signed Sarbanes-Oxley certifications (AC ¶¶ 354, 363, 365), which are insufficient as a matter of law.

Plaintiffs likewise seek to rely on supposed "admissions" by Defendants that, in fact, reveal neither wrongdoing nor knowledge of any false or misleading statement. For example, Plaintiffs seek to rely on a statement by Luo to argue that he was aware that Qudian's CLB practices were violating Circular 141 when, in fact, Luo stated those practices were "*in full compliance with Circular 141.*" AC ¶ 168 (emphasis added).

Plaintiffs also cannot rely on their confidential witness allegations to plead scienter because no confidential witness is alleged to have interacted with Luo or Yeung during the Class Period. Indeed, the only CW alleged to have had any contact with either Defendant was CW4, who left before the Class Period began. *See* AC ¶ 69; *Long Miao*, 2020 WL 996602, at *20. The other CWs likewise either left before the relevant period, occupied low-level positions with no contact with senior management, and/or offer nothing more than vague, conclusory, and—in many cases—totally irrelevant allegations. *See, e.g.*, AC ¶ 83 (alleging that CW6 simply "described Open Platform as being Defendant Yeung's idea").

<u>**Conclusion:**</u> This is a run-of-the-mill missed guidance case that should be dismissed, particularly given the protections of the PSLRA safe harbor. Plaintiffs' effort to avoid the PSLRA safe harbor by alleging non-forward looking omissions fail because they are not well-pleaded and/or are contradicted by the very statements that Plaintiffs themselves rely on in the AC. This case also falls dramatically short of meeting the scienter pleading standard. Accordingly, Defendants respectfully request permission to move to dismiss the AC on these separate and independent grounds.

The Court will hold a pre-motion conference on Defendant' proposed motion to dismiss on July 14, 2020 at 3 p.m. The parties are directed to consult the Court's Emergency Rules in Light of COVID-19, which are available on the Court's website, for dial-in information and other instructions.

SO ORDERED.

Dated:  July 9, 2020
                                                              _____
                                                              GREGORY H. WOODS
                                                              United States District Judge